# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| **JERRY LEE WARD** | **CIVIL ACTION NO. 3:11-cv-0330** |
| **LA. DOC #436514** | |
| **VS.** | **SECTION P** |
| | **JUDGE ROBERT G. JAMES** |
| **WARDEN CHAD LEE, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

*Pro se* plaintiff Jerry Lee Ward, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on February 28, 2011. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections (LDOC). He is incarcerated at the Franklin Parish Detention Center (FPDC), Winnsboro, Louisiana. Plaintiff complains that he is being denied the right to participate in Christian chapel services, the right to prison employment, and the right to participate in the prison grievance system all because of his sexual orientation.

He sued LDOC Secretary James LeBlanc, Franklin Parish Sheriff Steve Pylant, FPDC Warden Chad Lee and Corrections Officers Shane Bordelon, Brian Eubanks, Ronnie Fussel and Russell Thornhill. He seeks nominal, punitive, compensatory and general damages from the defendants.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

*Background*

As noted above, plaintiff is an LDOC inmate who has been incarcerated at the FPDC since June 4, 2010.  On January 29, 2011, plaintiff, then a resident of C-Dorm, was attending a Christian prayer service at the prison chapel.  Approximately 45 minutes into the service, Lt. Russell Thornhill removed plaintiff from the premises and had him placed in a holding cell. Later that same evening Thornhill released plaintiff from the holding cell. As he was being escorted back to his dorm, plaintiff asked Thornhill why he was removed from chapel and placed in the holding cell. Thornhill replied using various epithets and insults concerning plaintiff's sexual orientation and advised him that he would no longer be allowed to attend services at the chapel. Plaintiff submitted prison grievances concerning this issue to the Warden and the LDOC Secretary in February, 2011; however, he received no response to his grievance.

Plaintiff was charged with a disciplinary rules violation by Lt. Thornhill who accused plaintiff of masturbating in the chapel. Plaintiff denied the allegation; however, following a disciplinary hearing he was found guilty of the offense and placed in disciplinary dorm "A" and thereafter he was not allowed to attend chapel services.

Notwithstanding this ruling, plaintiff attempted to attend chapel services on February 17, February 20, and February 27, 2011, and on each occasion he was refused entry into the chapel. On each occasion plaintiff submitted grievances to the Warden and then to the Secretary of the LDOC; however, neither official responded to his grievances.

On April 11, 2011, plaintiff was transferred to Unit 3 or "Pear Dorm." According to plaintiff, religious services are offered three times a week for residents of Dorms A, B, C, D, E, F, and K, but not for residents of Unit 3 Pear Dorm. Plaintiff submitted grievances to the Warden and LDOC

2

Secretary but again received no response.

Plaintiff also claimed that he was denied a prison job because of his sexual orientation. However, plaintiff also conceded that only "jailhouse 'informants'" are given prison jobs. When plaintiff asked Lee for prison employment, Lee advised that he cannot allow homosexuals to work prison jobs. Later, Captain McMurray advised plaintiff that if he allowed plaintiff to work, "... other offenders will not feel comfortable working around plaintiff and he'll [sic] rather not have me in the kitchen than lose the majority of workers in the kitchen." Plaintiff's grievances with regard to prison employment were ignored by the Warden and the LDOC Secretary.

Plaintiff also complained to Secretary LeBlanc about Warden Lee's failure to respond to plaintiff's prisoner grievances.

### Law and Analysis

### 1. Screening

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A; 28 U.S.C. §1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

3

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1949,  173 L.Ed.2d 868 (2009)(A court should begin its analysis by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

4

Plaintiff's original and amended complaints provide a succinct but complete statement of his claims for relief. Assuming the truthfulness of his allegations of fact, and disregarding his conclusory allegations, it is clear that his complaints fail to state a claim for which relief may be granted.

## 2. Discrimination – Practice of Religion and Prison Employment

Plaintiff claims that he is the victim of discrimination based upon sexual orientation and implies that because he is a homosexual, he is treated differently than other prisoners who are heterosexual. To succeed on an equal protection claim, the plaintiff must allege that he was intentionally treated differently from "similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Taylor v. Johnson*, 257 F.3d 470, 472 (5th Cir.2001). "Discriminatory purpose ... implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir.1988) (internal quotation marks omitted). Put another way, in order to state a claim for violation of equal protection of the laws, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir.2001). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir.2003).

The alleged discrimination in this case is based on sexual orientation. Neither the Supreme Court nor the Fifth Circuit "has recognized sexual orientation as a suspect classification" or protected group; nevertheless, governmental action may violate the equal protection rights of a homosexual person "if it disadvantages homosexuals for reasons lacking any rational relationship

5

to legitimate governmental aims." *Johnson v. Johnson*, 385 F.3d 503, 532 (5th Cir.2004); accord *Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 348 (5th Cir.2006) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) and recognizing that absent membership in a suspect or protected class, a plaintiff can succeed on a "class of one" equal protection claim only when there is "no rational basis for the difference in treatment").

Legitimate governmental aims include "preservation of order and prevention of violence in prison" and protection of "homosexual prisoners from abuse at the hands of their fellow inmates". *See Hall v. Morehouse Parish Det. Ctr.*, No. 09-1476, 2009 WL 3762084, at *1, 4 (W.D.La. Nov.9, 2009) (adopting recommendation with one modification).  As is shown hereinafter, plaintiff's claims of discrimination based on his sexual-orientation are without a basis in fact or law.

### 3. Practice of Religion

Plaintiff was incarcerated at the FPDC on June 4, 2010.  On January  29, 2011, plaintiff was attending a Christian prayer service at the prison chapel when Lt. Russell Thornhill removed plaintiff from the premises and had him placed in a holding cell.  According to plaintiff, Thornhill initially refused to explain why plaintiff was suddenly removed from the chapel services; however, shortly thereafter, plaintiff was charged with a prison disciplinary violation based on Thornhill's claim that plaintiff was masturbating in the chapel.  Plaintiff denied the allegation, however, he admitted in his amended complaint that he was convicted of the offense in a prison disciplinary hearing; further, other than asserting a conclusory and self-serving claim of actual innocence, plaintiff has offered no other evidence to refute the disciplinary board's finding of fact, and, plaintiff has not, in either his original or amended complaints, alleged any due process violations with regard to the disciplinary hearing, or any facts which would call into question the fact-finding of the hearing officer.

6

Further, the facts alleged simply do not support the claim that plaintiff was discriminated against. Plaintiff has not complained that he was denied chapel privileges prior to January 29, 2011; thus, it must be assumed that he was free to attend chapel, without restriction, from June 4, 2010 until January 29, 2011 – a period of almost 8 months. Nor has plaintiff alleged that any other homosexual prisoners have been denied chapel privileges.  Finally, plaintiff admitted that ALL of the residents of "Pear Dorm" or "Unit Three" have been denied chapel privileges. In other words, the pleadings, read liberally, suggest that the restrictions placed on plaintiff were due to his behavior in the chapel, or his current prisoner classification and housing assignment,  and not, as he as alleged, due to his sexual orientation.

As noted above, other than his self-serving claim of innocence, plaintiff has not complained that he was deprived of any Constitutional right with regard to the prison disciplinary proceedings that resulted in being barred from attending chapel and which also apparently resulted in his transfer to "Pear Dorm." Of course, plaintiff implies that the disciplinary rules conviction resulted in the deprivation of his right to due process; however, in implying such a claim, he fails to state a claim for which relief may be granted. By virtue of a valid criminal conviction and subsequent legal confinement, a prisoner loses his expectation of liberty. *See Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).  The restriction or deprivation of various privileges resulting from a prison disciplinary conviction does not necessarily implicate a constitutional violation. This is so because "[t]he Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).  While the states may under certain circumstances create rights that implicate Due Process, such rights are limited to freedom from restraints that

7

impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

In other words, when a prisoner is lawfully incarcerated, he loses many of the rights and privileges that most citizens enjoy. *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir.1997). Thus, "... mere[ ] changes in the conditions of [ ] confinement ...  do not implicate due process concerns." *See Madison*, 104 F.3d at 768; see also *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir.1999) ("Inmates have no protectable property or liberty interest in custodial classifications."). Plaintiff's claims regarding the restrictions imposed following his disciplinary conviction, including the loss of chapel privileges and his transfer to "Pear Dorm," are not "atypical" and thus fail to state a claim for which relief might be granted. *Compare Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003)(Limitations on religious services ordinarily do not present an atypical and significant hardship, especially if the inmate is not prevented from exercising his religion within his cell).

### a. First Amendment

To the extent that plaintiff claims that the defendants have violated the First Amendment by denying him chapel privileges, that claim is without a basis in law.   Inmates do retain protections afforded by the First Amendment, including its directive that no law  shall prohibit the free exercise of religion. Nevertheless, lawful incarceration, by its very nature, brings about the necessary withdrawal or limitation of many privileges and rights. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

The standard for evaluating an inmate's claim that a prison regulation or practice improperly restricted his right to the free exercise of his religion requires the court to evaluate the regulation or

practice in order to determine whether it "is reasonably related to legitimate penological interests." *Id.* at 349. The "reasonableness" of a regulation or practice is evaluated based upon the following inquiry: (1) Is there a valid, rational connection between the prison practice and the legitimate governmental interest put forward by prison officials to justify the practice; (2) Are there alternative means of exercising the right that remain open to prison inmates, that is, are inmates allowed other means to express their religious beliefs on a general level; (3) What impact will accommodation of the asserted constitutional right have on guards and other inmates and on the allocation of prison resources generally; and, (4) Are alternatives to the prison practice available that would accommodate the inmates' rights at a *de minimis* cost to valid penological interests? *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), *Green v. Polunsky*, 229 F.3d 486, 489-90 (5th Cir.2000). Each factor need not be considered, and the factors need not be evaluated evenly. *Scott v. Mississippi Dep't of Corrections*, 961 F.2d 77, 80 (5th Cir.1992).

Plaintiff has not alleged in either his original complaint or his amended complaint that he is totally prohibited from practicing Christianity. Plaintiff has not shown that he is prohibited from maintaining his beliefs and praying and studying on his own and therefore, he fails to state a claim under the First Amendment. Further, as noted above, the defendants have a valid and legitimate governmental interest in prohibiting indecent acts in the chapel.

### b. RLUIPA

To the extent that plaintiff also alleges a violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA) [see 42 U.S.C. §2000cc *et seq*.], he likewise fails to state a claim. RLUIPA mandates that, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results

9

from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc-1(a).

The Supreme Court has noted that RLUIPA protects the rights of prisoners who are unable to freely attend to their religious observances and who are dependant on the government's permission and accommodation. *Cutter v. Wilkinson*, 544 U.S. 709, 721, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005).

In order to state a claim under RLUIPA, the prisoner must show that challenged government action places a "substantial burden" on the exercise of his religion. If the prisoner carries the burden of proof on this issue, then the government must demonstrate some compelling interest warranting the challenged action.  Under RLUIPA, a "religious exercise"  includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id. §* 2000cc-5(7)(A).  Thus, religious services, religious education, and dietary principles all qualify as "religious exercises."

While the statute does not define "substantial burden," Fifth Circuit  jurisprudence has defined it as follows in the context of the RLUIPA, "... a government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins v. Kaspar*, 393 F.3d 559 (5th Cir. 2004) at 569-70.

As noted in the discussion above, plaintiff has never alleged that the defendants have done anything to pressure him to modify his religious behavior or violate his beliefs or the tenets of

Christianity – plaintiff has merely been deprived of the privilege of attending chapel services. Further, as noted in the discussion of the First Amendment,  maintaining order in the chapel is a legitimate governmental interest.

In short, plaintiff has likewise failed to state a claim for which relief may be granted under the RLUIPA.

**4. Prison Employment**

With regard to his claim concerning prison employment, plaintiff should be aware that he has no constitutionally  protected property or liberty interest in his in prison employment. *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir.1988); *Jackson v. Cain*, 864 F.2d 1235, 1250 (5th Cir.1989); *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir.1988); *see also  Moody v. Doggett*, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976) (Prisoner classification and eligibility for rehabilitation programs are not subject to "due process" protections).  Thus, plaintiff's complaint, insofar as it asserts the existence of a constitutional right to a prison job,  fails to state a claim for which relief may be granted.

Further, to the extent that he claims discrimination with regard to prison employment, his pleadings again fail to allege the facts that support such a claim. As noted previously, plaintiff elsewhere alleged that only "informants" are afforded prison jobs, and, if that is true, then his failure to obtain employment was not based on sexual preference.

He then alleged that, according to  Capt. McMurray, the prison administration has concluded that allowing homosexuals to perform prison jobs could cause problems with other prisoners.  If that is true, then the administration's concerns present a valid penological reason for the alleged discrimination.

11

**5. Right to Prisoner Grievances**

Plaintiff also complained that Secretary LeBlanc and Warden Lee failed to respond to his prisoner grievances. The Fifth Circuit has held that an inmate "does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless." *Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir.2005) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

*Recommendation*

Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaints be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

12

In Chambers, Monroe, Louisiana, August 11, 2011.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE